In re John J. and Clara LOCKOVICH, Debtors.

GALLATIN NATIONAL BANK, Movant

v.

John J. and Clara LOCKOVICH, Respondents.

Bankruptcy No. 88-1192 PGH. Motion No. 88-4116.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 2, 1989.

Donald R. Calaiaro, Pittsburgh, Pa., for debtors.

Charles O. Zebley, Jr., Pittsburgh, Pa., for Gallatin Nat. Bank.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### ISSUE

The issue is whether the lienholder on a 22 foot motorboat with a purchase price of $32,500 and a purchase money security interest of $26,500 is perfected without the filing of financing statements under the Uniform Commercial Code.

### FACTS

■ On August 20, 1986, debtors purchased a motorboat 22 feet long weighing 3,200 pounds (a 1986 Chapparel Villian III) for $32,500 and borrowed $26,756.14 from the Gallatin National Bank ("Bank"). The debtors granted to the Bank a security interest in the boat. The Bank duly filed a financing statement with the Secretary of

the Commonwealth and with the Prothonotary of Greene County. Greene County was the county in which the Bank was located, but the debtors were residents of Allegheny County. Hence, the filing of financing statements was ineffective under the Uniform Commercial Code.

## DISCUSSION

The Bank argues that no filing was necessary in order to perfect its lien on the boat and therefore, the fact that it filed a financing statement in the wrong county is immaterial.

13 Pa. C.S.A. § 9302(a)(4) provides:

"(a) General Rule—A financing statement must be filed to perfect all security interests except the following: ... (4) a purchase money security interest in consumer goods."

The Bank asserts that the boat is a "consumer good" and therefore, no financing statement need be filed in order to perfect the Bank's lien.

Goods are divided into four classes under § 9–109: (1) "consumer goods," (2) "equipment," (3) "farm products," and (4) "inventory." "Any goods not covered by one of the definitions in the section are to be treated as equipment." 13 Pa. C.S.A. § 9–109, Comment 5.

In *Atlas Credit Corp. v. Dolbow*, 193 Pa.Super. 649, 165 A.2d 704 (1960), the court, without analysis, inferred from testimony of the parties' occupations that a boat was a consumer good. The *Atlas* opinion indicates that there was no serious discussion as to the question of whether or not a boat was properly classified as a consumer good.

In *In re Trumble*, 5 U.C.C.Rep.Serv. (Callaghan), 543 (W.D.Mich.1968), the court stated:

[T]he classifications of Sec. 9109 are based solely on use or function and it is almost, if not impossible, to conceive of an item of tangible personal property that cannot be a consumer good. Even the recently retired "Queen Mary" could

qualify as a consumer goods if purchased by a billionaire for his own personal use ...

The debtors argue that the boat was not "consumer goods" and that filing was required to perfect the purchase money security interest citing *Union National Bank of Pittsburgh v. Northwest Marine, Inc.*, 27 U.C.C.Rep.Serv. 563, 62 Erie Co. L.J. 87 (1979). That court held that a 33 foot motorboat was not "consumer goods" and that the filing of financing statements was necessary in order to perfect a lien thereon, explaining:

"A 33–foot motorboat purchased for personal and family use at a price of $8,000.00 was not a 'consumer good' under the UCC and would not be so treated for the purpose of dispensing with the filing of a financing statement by the secured party pursuant to Section 9–302(1)(d). The concept of a consumer good indicates the 'using up' or 'wasting away' or consumption of the consumer good to the extent that a second lending institution would probably not be willing to advance money to the owner of the readily depreciable consumer good and take a security interest therein. A 33–foot boat is a good of substantial magnitude relative to the ordinary concept of consumer goods and should not be treated the same as a refrigerator or television. Rather, in Pennsylvania a motorboat is more correctly classified in the status of a motor vehicle rather than as consumer goods, both because they are more similar with respect to purchase price and because motorboats are required to be licensed in Pennsylvania as are motor vehicles under Section 9–302(1)(d), which mandates filing for motor vehicles required to be licensed."

The Bank argues that this Federal Court, even though it is applying state law, is not bound by *Northwest Marine:*

"Federal courts must follow an authoritative pronouncement of the highest court of a state. *Ciccarelli v. Carey*

*Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3rd circ.1985). When the only authority on an issue is a decision of a Pennsylvania Court of Common Pleas, a federal court's disposition is governed by a prediction of how the state's highest court would decide were it confronted with the problem. *Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Kenneth R. Ambrose, Inc.,* 727 F.2d 279, 283 (3rd circ.1983). Thus, a lower court's decision is entitled to 'some weight,' yet it is not controlling."

Thus, the Bank argues that a Pennsylvania Appellate Court would not agree with *Northwest Marine* and hence, this federal court's determination should be based on our independent evaluation of what we think a Pennsylvania Appellate Court would do with a case similar to the *Northwest Marine* case.

The Bank points out that the court in *Northwest Marine* recognized that the Uniform Commercial Code does not address the problem of secret liens on valuable motorboats, quoting *Northwest Marine,* 62 Erie Co. L.J. at page 90 to the effect that "the Pennsylvania Legislature must have committed an oversight ... thereby ignoring the special problem created by motor boats." The Bank further quotes, again at page 90: "This gap is probably best filled by interstitial law-making by the court until the Legislature takes the opportunity to fill the void."

We agree with the conclusion of the court in *Northwest Marine,* but we would express it in different terms.

■ To begin, we think it is not necessarily true that "consumer goods" are goods which are used up in a short time. It would seem that the useful life of a refrigerator, or a range, or living room furniture, would be comparable to the life expectancy of a $32,000 pleasure craft. We think the term "consumer goods" is a description of a generic classification of goods, and that that classification includes the items normally purchased by the average person for personal or household use. That description does *not* refer to the particular *person* making the purchase. Thus, an industrial plant held by a Henry Ford for personal use is not "consumer goods." Nor may the Queen Mary be "consumer goods" even when owned by a millionaire for personal purposes. Nor may all goods, regardless of size, shape, and value, be classified as "consumer goods." To this extent, we must disagree with *Trumble, supra.*

■ The court in *Northwest Marine* likened motor vehicles to motorboats. We think that is an appropriate comparison even though there are differences in treatment.

13 Pa. C.S.A. § 9302(a)(4) provides that filing is required to perfect a lien on a motor vehicle required to be registered; but § 9302(c) exempts motor vehicles from such filing because they are subject to the Motor Vehicle Law, Title 75, which requires registration and the issuance of a certificate of title which must contain lien information. 75 Pa. C.S.A. § 1101, 1106 and 1331. Thus, automobiles would not be exempt from the filing requirement and filing would be required to perfect liens thereon, except that a better system—a title certificate system—has been provided by the Legislature to supplant the U.C.C. filing system.

Motorboats are required to be registered (but no certificate of title is issued) under 30 Pa. C.S.A. § 5301. Transfer of ownership of a motorboat may take place by preparation and execution of a bill of sale; registration of a transfer of ownership is accomplished by filing an application on the form prescribed by the Pennsylvania Fish Commission. 30 Pa. C.S.A. § 5305(b). If motor vehicles and motorboats are comparable, then, since the U.C.C. contains no exemption from filing, the filing requirement remains in effect as to motorboats.

We are also persuaded by the history of chattel mortgages in Pennsylvania. "Chattel mortgages were, as to a mortgagor's

creditors or bona fide purchasers, considered to be contrary to public policy and unenforceable." 33 Pennsylvania Law Encyclopedia § 11. The Chattel Mortgage Act of 1945, repealed by the U.C.C., was strictly construed. Thus, the reservation of a secret lien on a valuable property has not been looked upon with favor.

We also note that some states have modified UCC § 9–302(1)(d) so that consumer goods are exempted from UCC filing requirements only if the value, or the debt secured, is under a certain limit; for example, under $500 in the state of Maryland; under $1,000 in the state of Maine. The problem has therefore been addressed by some legislatures.

The U.C.C. exempts consumer goods from the burdens of filing, thereby allowing a secret lien thereon for the obvious reason that such goods were viewed as being of inconsequential value in the commercial world. The burden of filing would be so disproportionate to the value protected as to constitute a nuisance.

However, secrecy of a security interest in a valuable automobile would create hardship for subsequent creditors who are encouraged to extend credit secured by the automobile as well as those who may purchase the automobile from the owner. An adequate system of lien disclosure has therefore been provided by the legislature.

The policy of protecting the reasonable expectations of subsequent creditors and purchasers is equally relevant when the collateral is a boat. The absence of a filing requirement for the perfection of a security interest in a boat would defeat the stated purpose of this Section, "to simplify, clarify, and modernize the law governing commercial transactions." A boat dealer or subsequent purchaser would be subject to large losses by (1) taking a "trade-in" without knowledge of a secret lien or (2) buying a used boat which is subject to a secret lien.

We do not intend the above analysis to preclude a different result as to a small boat of nominal value. We do not presume to decide where to draw the line, except to find that the $32,500 boat in question is not "consumer goods" and that the lien thereon was and is subject to the filing requirement of the U.C.C. to perfect it.

In the instant case, proper financing statements were not filed. Therefore, the Bank's interest is not perfected. The Bank is an unsecured creditor and its request for relief from stay must be denied.

It is therefore ORDERED:

1. Gallatin National Bank's Motion for Relief from Stay is denied and its lien against the 22 foot 1986 Chapparel Villian III is invalid.

2. Gallatin National Bank's claim against the estate of debtors, John J. Lockovich and Clara Lockovich, is allowed as an unsecured claim.